RAFAEL BUSCAGLIA, Tesorero de Puerto Rico, peticionario, *v.* TRIBUNAL DE CONTRIBUCIONES, demandado; CARMEN DEL TORO RODRÍGUEZ ET AL., interventoras.

Núm. 245.—*Sometido:* Mayo 4, 1950. *Resuelto:* Mayo 31, 1951.

*Hon. Procurador General Víctor Gutiérrez Franqui (Vicente Géigel Polanco, Ex Procurador General,* en la petición y en el alegato) y *J. C. Santiago Matos, Procurador General Auxiliar,* abogados del peticionario; *Damián Monserrat, Jr.* y *Gabriel de La Haba,* abogados de los interventores, querellantes en el pleito principal.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

Los antecedentes del presente litigio aparecen de nuestras decisiones en *Del Toro* v. *Tribunal de Contribuciones,* 65 D.P.R. 63 y *Buscaglia, Tes.* v. *Tribl. de Contribuciones,* 68 D.P.R. 438. Habremos de referirnos aquí tan sólo a aquéllos que son necesarios para resolver la controversia en el presente caso.

El 5 de febrero de 1946 el Tesorero de Puerto Rico notificó a las aquí interventoras, como herederas de Fernando del Toro Saldaña—fallecido en España el 7 de noviembre de 1936—la valoración por él hecha de los bienes de la herencia, así como el cómputo de la contribución de herencia a ellas impuesta, ascendente en total a $37,301.44, más intereses a razón del 1 por ciento mensual desde el 7 de mayo de 1937 hasta la fecha de su pago. El 28 de febrero del mismo año las aquí interventoras pagaron al Tesorero el importe de la contribución, más las siguientes sumas por concepto de intereses: $20,515.80 correspondientes al período de 7 de mayo de 1937 a 21 de noviembre de 1941, computados al 1 por ciento mensual, y $9,511.88 por el período comprendido entre esta última fecha y el 28 de febrero de 1946, computados al 6 por ciento anual. De la suma total reclamada por concepto de intereses por el Tesorero hasta el día en que se verificó su pago—$39,539.53—quedó pendiente de pago, por no estar conformes las herederas, la de $9,511.88, que representaba la diferencia entre el tipo de interés de 1 por ciento mensual

fijado por el artículo 9 de la Ley núm. 99 de 29 de agosto de 1925, según quedó enmendado por la núm. 20 de 27 de abril de 1933, para los casos en que se incurriese en mora en el pago de la contribución, y el tipo de interés de 6 por ciento anual fijado para tales casos por el propio artículo 9 en virtud de la enmienda hecha al mismo por la Ley núm. 20 de 21 de noviembre de 1941.

En querella radicada el 5 de marzo de 1946 ante el Tribunal de Contribuciones solicitaron las herederas que se declararan nulos y sin valor la liquidación y cómputo de intereses llevados a cabo por el Tesorero, en lo concerniente a los intereses por el período de 21 de noviembre de 1941 a 28 de febrero de 1946 y que se dictara resolución declarando que los intereses sobre la contribución debían computarse a razón del 1 por ciento mensual desde el 7 de mayo de 1937 al 21 de noviembre de 1941 y a razón de 6 por ciento anual desde esta última fecha hasta el 28 de febrero de 1946 en que fué hecha efectiva la contribución.

El Tribunal de Contribuciones dictó resolución declarando con lugar la querella expresándose en parte en la siguiente forma:

"Era a partir de dicha fecha de febrero 5 de 1946 que tenía que comenzar a contarse el período de 90 días que para satisfacer la contribución, y sin venir obligadas a pagar intereses, tenían las recurrentes. De haberlas pagado después de expirado dicho plazo, estaban obligadas a pagar intereses al tipo de 6 por ciento anual—pero tan sólo, repetimos, a partir de noventa (90) días después de dicha fecha.

"Desde luego, si deseaban litigar, tenían que efectuar tanto el pago de la parte de la contribución con la cual estuviesen conformes como la radicación de su instancia ante nos, acompañada esta última con el recibo acreditativo de tal pago, dentro de los treinta (30) días inmediatamente siguientes a la fecha de la notificación de la resolución administrativa por parte del Tesorero, o sea, en el caso de autos, el día 5 de febrero de 1946. Véase caso de *Del Toro,* supra.

"En la presente querella la notificación *válida* del cómputo de la contribución, según hemos indicado, fué enviada a las

herederas el día 5 de febrero de 1946 y el pago de la misma fué efectuado el día 28 del mismo mes y año. Ellas no venían obligadas a pagar, por lo tanto, intereses algunos en concepto de mora.

"Habiendo ellas satisfecho $30,027.68 en concepto de intereses, sin venir obligadas a ello, procede que declaremos con lugar el recurso del epígrafe en todos sus extremos, ya que a tenor de lo anteriormente expuesto, tampoco tienen que pagar los intereses a que se contrae el presente caso.

"Como no tenemos ante nos nada relacionado con el posible derecho que a un reintegro de los intereses pagados tuvieran las apelantes, no es necesario que discutamos tal cuestión."

No conforme el Tesorero recurrió para ante este Tribunal. Los señalamientos de error sometidos por él en dicho caso fueron sintetizados por nosotros en *Buscaglia, Tes.* v. *Tribl. de Contribuciones*, supra, en la siguiente única cuestión: ¿Erró el Tribunal de Contribuciones al aplicar en la resolución de este caso las disposiciones de la Ley núm. 20 de 21 de noviembre de 1941 ((2) pág. 65), enmendatoria del artículo 9 de la Ley núm. 99 de 29 de agosto de 1925 (pág. 791), enmendado por la Ley núm. 20 de 27 de abril de 1933 (Leyes de 1932–33, pág. 233), y al no aplicar esta última ley que era la que estaba en vigor a la fecha de la muerte del causante, ocurrida el 7 de noviembre de 1936?

Confirmamos la resolución recurrida y declaramos que el Tesorero no podía, bajo las circunstancias concurrentes en dicho caso, privar a las herederas de los beneficios de la ley vigente en la fecha en que a éstas les fué legalmente posible cumplir con la ley, o sea, pagar la contribución. En el último párrafo de nuestra opinión dijimos lo siguiente: "Si las herederas interventoras estaban o no obligadas a pagar las sumas que pagaron por concepto de intereses o si tienen o no derecho a reclamar la devolución total o parcial de las sumas pagadas, son cuestiones que no debemos considerar por no haber sido planteadas por las interventoras ni resueltas por el tribunal inferior."

El 3 de septiembre de 1948 las aquí interventoras inicia-

ron el presente pleito radicando querella ante el Tribunal de Contribuciones, solicitando el reintegro de los intereses pagados sobre la contribución de herencia por el período de 7 de mayo de 1937 a 21 de noviembre de 1941 al tipo de 1 por ciento mensual, más aquéllos por el período de diciembre (sic) de 1941 a febrero de 1946 al tipo de 6 por ciento anual, o sea en total la suma de $30,027.68. Esta cantidad fué la que juntamente a la contribución en sí fué pagada el 5 de febrero de 1946 bajo los términos del artículo 7 de la Ley núm. 99 de 29 de agosto de 1925, según quedó enmendado por la Ley núm. 20 de 21 de noviembre de 1941.

El Tesorero solicitó la desestimación de la querella, a base de la defensa de cosa juzgada, fundándose esencialmente en que dentro de la acción seguida anteriormente ante el Tribunal de Contribuciones y que terminó con nuestra decisión en *Buscaglia, Tes.* v. *Tribl. de Contribuciones,* supra, aunque de hecho no lo fué, pudo haber sido litigado el derecho de las querellantes a la totalidad de los intereses impuestos por el Tesorero, ya que se litigó su derecho a parte de los mismos, no siendo procedente el fraccionamiento de su causa de acción.

Declarada sin lugar la desestimación solicitada, así como la reconsideración de la resolución denegatoria, contestó el Tesorero aceptando los hechos esenciales de la querella y reproduciendo la defensa de cosa juzgada. Así las cosas, solicitaron las aquí interventoras que se dictara sentencia por las alegaciones. El Tesorero convino en que la controversia en el caso planteaba fundamentalmente una cuestión de derecho. El tribunal inferior declaró con lugar la querella y ordenó al Tesorero devolver a las aquí interventoras la cantidad de $30,027.68 cobrada indebidamente por concepto de intereses por mora.

Expedimos el auto de *certiorari* a petición del Tesorero para determinar si el tribunal inferior cometió o no error de derecho al declarar sin lugar su defensa de cosa juzgada.

▋ Según dijimos en *Meléndez* v. *Cividanes,* 63 D.P.R.

4, 12, "La defensa de cosa juzgada está inspirada en la necesidad de poner fin a los litigios. De ahí que para poderla invocar con éxito no sólo precisa la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron, si que también que la sentencia anterior por su naturaleza o por disposición de la ley resuelva definitivamente el asunto."

Hemos de examinar por lo tanto el alcance de la acción en que se dictó la sentencia anterior, invocada como defensa en este caso, para determinar si la doctrina de cosa juzgada es de aplicación. El Tesorero sostiene que se trata de la misma reclamación y que al no incluirla en su integridad en el primer litigio lo que hicieron las querellantes fué fraccionar su causa de acción. Veamos.

En una larga serie de decisiones este Tribunal ha examinado la doctrina de cosa juzgada, aplicándola unas veces y rechazándola otras.[1] Pero hasta el presente, no había sido considerada en litigios contributivos.

Está hoy definitivamente establecido por las cortes federales y estatales que la defensa de cosa juzgada puede invocarse en tal clase de pleitos.[2] En líneas generales, sin

---

[1] Véanse entre otras: *Miller* v. *Cía. Ron Carioca*, 71 D.P.R. 707; *Ex parte Soto; Rodríguez, Int.*, 71 D.P.R. 547; *Pueblo* v. *Ibarra*, 69 D.P.R. 563; *Vidal* v. *Monagas*, 66 D.P.R. 622; *Avellanet* v. *Porto Rican Express Co.*, 64 D.P.R. 693; *Pueblo* v. *Lugo*, 64 D.P.R. 554; *Meléndez* v. *Cividanes*, 63 D.P.R. 4; *Laloma* v. *Fernández*, 61 D.P.R. 569; *Cintrón* v. *Yabucoa Sugar Co.*, 54 D.P.R. 519; *Manrique Gil* v. *Goffinet*, 37 D.P.R. 336.

[2] En cuanto a la aplicación de la doctrina de cosa juzgada en casos contributivos, véanse Mertens, *Law of Federal Income Taxation*, Vol. 10A, Capítulo 60; Griswold, *Res Judicata in Federal Tax Cases* (1937), 46 Yale L. J. 1320 y las Monografías en 92 L. Ed. 912, 130 A.L.R. 374, 140 A.L.R. 797, 150 A.L.R. 5, 162 A.L.R. 1204.

Y en cuanto a su aplicación en litigios contributivos en casos de herencia, véanse *Guettel* v. *United States*, 95 F.2d 229, 118 A.L.R. 1060 (1938); *Van Dyke* v. *Kuhl*, 171 F.2d 187 (C.A. 7, 1948); *Cleveland* v. *Higgins*, 50 F. Supp. 188 (1943), 148 F.2d 722 (C.C.A. 2, 1945); *Martin* v. *Broderick*, 81 F. Supp. 693 (1949), 177 F.2d 886 (C.A. 10, 1949); *Magruder* v. *Safe Deposit & Trust Co.*, 159 F.2d 913 (C.C.A. 4, 1947), 65 F. Supp. 783 (1946); *Moir* v. *United States*, 57 F. Supp. 529 (1949), 149 F.2d 455 (C.C.A. 1, 1945).

embargo, la tendencia de dichos tribunales ha sido una de significada restricción en la aplicación de dicha doctrina en tales casos. (³)   Con este panorama a la vista, determinemos ahora si, bajo el estado de nuestra legislación fiscal, cometió error el tribunal inferior al resolver que no procedía la defensa de cosa juzgada en el caso de autos.

■ Es evidente que si la notificación válida del cómputo de la contribución de herencia fué hecha a las contribuyentes el día 5 de febrero de 1946 y el pago de aquella parte con la cual estuvieron conformes fué efectuado el día 28 del mismo mes y año, ellas no venían obligadas a pagar intereses algunos por concepto de mora, de conformidad con el artículo 9 de la Ley núm. 99 de 29 de agosto de 1925, según quedó enmendado por la Ley núm. 20 de 21 de noviembre de 1941, que en lo pertinente dispone que "Dichas contribuciones [las contribuciones sobre herencia] serán devengadas y pagaderas dentro del término de noventa días inmediatamente siguiente a la fecha en que el Tesorero notificare a los interesados la contribución correspondiente a la herencia" y que "Si dichas contribuciones no se pagasen dentro del expresado término de noventa días, se cargarán y cobrarán intereses sobre ellas al tipo de 6 por ciento anual."

Como el artículo 7 de la Ley 99 ya citada exigía, para poder recurrir al Tribunal de Contribuciones a impugnar la imposición de la contribución de herencia, el pago de aquella parte de la contribución con la cual se estuviera conforme, las contribuyentes pagaron tanto la contribución en sí como la parte de los intereses que consideraron venían obligadas a pagar, notificando al Tesorero su inconformidad con la imposición de intereses hecha al tipo de 1 por ciento mensual

---

(³) *Commissioner* v. *Sunnen*, 333 U. S. 591, 92 L. ed. 898 (1948); *M. M. Argo*, 3 T. C. 1120, *Argo* v. *Commissioner of Internal Revenue*, 150 F.2d 67, certiorari denegado en 326 U. S. 762 (1945); Henry S. Sellen, *The Sunnen Case*, 4 Tax L.R. 363; *Cambridge Loan & Building Co.* v. *United States*, 57 F.2d 936 (1932).

Véanse en particular las palabras del Juez Magruder a ese efecto en *Pelham Hall Co.* v. *Hassett*, 147 F.2d 63, 67 (C.C.A. 1, 1945).

desde el 21 de noviembre de 1941 hasta la fecha de pago, por considerar que únicamente venían obligadas a pagar intereses al tipo de 6 por ciento anual desde dicha fecha.

Hecho el pago a que hemos aludido anteriormente fué que se inició el 5 de marzo de 1946 el pleito en que se impugnó el tipo de 1 por ciento mensual a que el Tesorero computó los intereses desde el 21 de noviembre de 1941. Es de notarse que si bien la querella en dicho caso impugnaba el tipo de interés aplicado por el Tesorero al computar los intereses por el período de referencia—ya que las contribuyentes consideraban que debían tener el beneficio de la reducción que del 1 por ciento mensual al de 6 por ciento anual en dicho tipo de interés dispuso la Ley núm. 20 ya mencionada—y que sobre tal cuestión esencialmente giró la controversia entre las partes en el Tribunal de Contribuciones, éste, al declarar con lugar la querella, lo hizo por los fundamentos que ya antes transcribimos, o sea, no porque las querellantes en dicha acción vinieran obligadas a pagar únicamente el 6 por ciento como tipo de interés desde el 21 de noviembre de 1941 en adelante, y sí por el fundamento de que no venían obligadas a pagar intereses algunos por concepto de mora, toda vez que la contribución fué pagada dentro del término de 90 días desde que se les notificó por el Tesorero el cómputo válido de la misma el 5 de febrero de 1946.

▆▆ No obstante hacer el Tribunal de Contribuciones una correcta exposición de la ley al consignar los fundamentos de su decisión, nada resolvió en cuanto al posible derecho de reintegro de los intereses pagados indebidamente por las querellantes, y así lo hizo constar expresamente. Es natural que así actuara, pues bajo el estado de nuestra legislación fiscal, no podía, aún bajo la autoridad de las Reglas de Enjuiciamiento Civil aplicables a los procedimientos ante el mismo, conceder dicho reintegro—cosa que de otro modo hubiera podido hacer, por ser compatible con los hechos no controvertidos y la ley—ya que bajo las circunstancias del caso y la naturaleza especial de la acción ejercitada carecía

de jurisdicción dentro de la misma para disponer que se reintegraran los intereses indebidamente pagados. Esto es así por cuanto la ley vigente mientras transcurría el primer pleito, autorizando el reintegro de cantidades cobradas indebidamente por concepto de contribuciones, requería que el contribuyente reclamara por escrito el reintegro al Tesorero de Puerto Rico dentro de los cuatro años de efectuado el pago, mientras que la Ley núm. 169, aprobada el 15 de mayo de 1943, enmendatoria de la núm. 172, aprobada el 13 de mayo de 1941 creando el Tribunal de Apelación de Contribuciones de Puerto Rico, requería, para que pudiera invocarse la jurisdicción de dicho tribunal, que sobre el asunto en controversia hubiere recaído la correspondiente resolución administrativa por parte del Tesorero de Puerto Rico. Lo primero no se hizo por las contribuyentes hasta después de nuestra decisión en *Buscaglia, Tes.* v. *Tribl. de Contribuciones*, supra, en el que definitivamente se reconoció que la ley aplicable, bajo las circunstancias de su caso, era la núm. 20 de 21 de noviembre de 1941, y por lo tanto no existía resolución administrativa del Tesorero sobre el asunto del derecho al reintegro mientras se sustanciaba la primera querella.

El pleito original reclamando los intereses cobrados por el Tesorero en exceso del 6 por ciento por el período del 21 de noviembre de 1941 en adelante fué instituído dentro del marco limitado del remedio que la Ley núm. 99 proveía, luego de pagarse—indebidamente—los intereses con los cuales estuvieron conformes las contribuyentes. Éstas tenían cuatro años desde su pago para reclamar su reintegro y así lo hicieron en tiempo hábil.

El Tesorero concede que el derecho al reintegro no fué litigado en el primer pleito. Pero afirma que pudo haberse litigado y que por lo tanto la doctrina de cosa juzgada impide que se litigue ahora fraccionadamente dentro de la presente acción. Rechazamos, por lo dicho, esa contención. El derecho al reintegro no podía litigarse, como de hecho no se litigó, dentro del primer pleito. Una vez que las contribu-

yentes pagaron aquella parte de los intereses con que estuvieron conformes, el Tribunal de Contribuciones no podía conceder el reintegro a menos que estuvieran presentes los requisitos jurisdiccionales requeridos por la ley. Según hemos visto, no lo estuvieron en el primer pleito—que no fué uno de reintegro y sí uno en que se impugnaba la imposición de la contribución de herencia en lo concerniente a parte de los intereses—y el Tribunal de Contribuciones carecía por lo tanto de jurisdicción· para conceder el remedio adecuado a una acción de reintegro. En consecuencia, la reclamación de las contribuyentes de los intereses pagados indebidamente, objeto de esta acción, no era recobrable en el primer pleito y por ello no podemos convenir con el Tesorero en que fué infringida la doctrina contra el fraccionamiento de una causa de acción. Creemos que lo dicho en *Avellanet* v. *Porto Rican Express Co.,* 64 D.P.R. 693, 710, sobre dicha doctrina, es de aplicación al caso de autos:

"Dicha doctrina 'sólo es aplicable cuando la ley no ha puesto impedimento alguno para que él pueda obtener, en la acción que ha entablado, todo el remedio a que tiene derecho,' *Taub* v. *Mc-Clelland Colt Commission Co.,* 51 Pac. 168 (Colo.), citado con aprobación en *Taylor* v. *Continental Supply Co.,* 16 F.(2d) 578, 581, (C.C.A. 8th. 1926). 'La regla en cuanto al fraccionamiento de las causas de acción sólo se aplica a reclamaciones, "que entonces son recobrables" en la primera acción.' *United States* v. *Pan-American Petroleum Co.,* 55 F.(2d) 753. ·782, (C.C.A. 9th, 1932). *Cf. U. S.* v. *Calif. & Oregon Land Co.,* 192 U. S. 355; *Baltimore S.S. Co.* v. *Phillips,* 274 U.S. 316. Véase 1 Moore, supra, sección 204, pág. 147, escolio 19."

No siendo aplicable al caso de autos la doctrina de cosa juzgada, no cometió error el tribunal inferior al así·resolverlo y declarar con lugar la querella.

*La sentencia del Tribunal de Contribuciones será confirmada.*

El Juez Asociado Sr. Snyder no intervino.